Good morning, Your Honors. My name is Heidi Lynn Lambros from the Office of the State Appellate Defender, representing Defendant Appellant Jesse Bonds. I will be focusing my remarks today on Issue Number 1, but I'd be happy to answer any questions about the sentencing issue. Jesse Bonds made four unambiguous requests to proceed pro se before his May 2012 trial. Despite Mr. Bonds' unequivocal knowing and intelligent waiver of his right to counsel, the trial judge erroneously denied him his constitutional right to self-representation for reasons even the state concedes had no basis in law. Because the denial of the Sixth Amendment right to self-representation is a structural error, not subject to harmless error analysis, Mr. Bonds is entitled to a new trial. Clearly, the trial judge here abused her discretion in denying each of Mr. Bonds' four requests to proceed pro se. On January 20th, Mr. Bonds made his first written request to proceed pro se in a letter to the trial judge. He said that he wanted to go pro se, he wanted to stand by counsel, and he believed that his strategy for trial would be a little bit better than his trial counsel. The trial judge looked at his letter and said, you know what, I don't think that your letter reveals that you understand the law, Mr. Bonds, and you're not entitled to hybrid representation regardless. She then decided to grill him and question him about his legal acumen, asking him if he had ever taken a law class, if he had ever cross-examined a witness, if he was familiar with ballistics and DNA testimony. And when Mr. Bonds responded, of course not, no I haven't, he said, well, since you're not a lawyer, you cannot proceed pro se. This was not a proper basis to deny Mr. Bonds his constitutional right to self-representation. It is black letter law, starting from Feretta in 1975, that a defendant's lack of legal knowledge is not a proper basis to deny them the right to proceed pro se, although the defendant's argument is actually not the case. He requested hybrid representation as he was entitled to do. It was a conditional request. It wasn't a request where he forfeited his right to proceed pro se. And his request, again, was unequivocal. The trial judge knew that he made two requests. One was a request for hybrid representation. One was a request for pure pro se representation. And she denied them both based on the improper basis that Mr. Bonds had no legal experience or expertise. Secondly, Mr. Bonds again made another unequivocal request to proceed pro se on February 6th. He acknowledged the seriousness in this written request of what was happening there and that he sat through his first trial, although he had no legal experience. And he said the bottom line was, I would like to go pro se. Once again, the judge criticized Mr. Bonds for not knowing how to provide proper pleadings. She said there's no caption here. I can tell by what you filed that you don't understand the law. And these pleadings are inadequate. And more than that, Mr. Bonds, you have no right to proceed pro se. The right to go pro se is solely with my discretion. And more than that, in order to proceed pro se, you have to articulate a substantial basis to why I should allow you to proceed pro se. Now, even the state, again, concedes that there is no basis in law for her to reject Mr. Bonds' request on February 6th. That it is actual black letter law. And once again, the lack of legal acumen is not a proper basis to deny someone the right to go pro se, number one. Number two, of course it is a constitutional right to proceed pro se. It is not within the trial judge's discretion as long as the waiver is knowing and voluntary. Turning now, again, this could be the end of the inquiry. Mr. Bonds made two unequivocal requests that the state concedes was improper. This should be the end of the inquiry. It's a structural error. Mr. Bonds was denied his right on two occasions. This could actually end the inquiry right here. But I'll turn to the third request, which again the state concedes was error. Mr. Bonds, once again, a couple days before trial, made another motion. This one a more formal motion. He had a caption in there. He referenced Rule 401. He erroneously noted that he was charged with a class X felony and that murder had a 6 to 20 year sentence. But he said that he had some college and that he believed that he could do this, that this is something that he wanted to do, that he wanted to go pro se. Once again, the judge said, well, Mr. Bonds, what kind of class is murder? It's not a class X. And he said, I think it's a super X. And she said, no. That's why you need a lawyer. And then she said, Mr. Bonds, what is the range? And he said, between 6 to 20. And she said, that's incorrect. That's why you need an attorney. And she said, there are occasions when defendants should be able to represent themselves, when they know the range of punishment and when they know the class of felonies. But since Mr. Bonds doesn't know any of that, I'm not going to let him represent himself. Once again, the state concedes this is error. She denied him his right to go pro se based on him not understanding information that she was required to give him under Rule 401. It was her obligation to tell him, to break it down for him, and to say, no, Mr. Bonds. This is a very serious case. You're facing between 20 to 60 years in add-on punishment. This is the class of punishment. But she did not. And she denied him his right to go pro se based on her failure to comply with Supreme Court rule. Also the failure to comply with Rule 401 in and of itself is an error. She was required at that point to comply with her mandate and to inform him to ensure that his waiver was knowing and intelligent. She did not do that. Once again, something that the state concedes. Again, because of her denial of that request as well, which is a structural error, Mr. Bonds was denied his right to self-representation. Although he did ask for a 30-day continuance, again, he didn't condition that on his right. He said, I would ask for one if I was allowed to go pro se. He made a conditional response. But again, his request for pro se was unequivocal. Now we turn to the fourth request, which is what the state is essentially hanging its hat on here. They're asking this court to ignore the first three unequivocal requests to proceed pro se and for the first time in law, say that a structural error can be rendered harmless by later contact. That the court, although a long and extensive U.S. Supreme Court and Illinois Supreme Court history says, an error is structural and it stops. And a state is entitled to a new trial. The state is asking this court to create new law and say that because the judge may have had a reason to deny him his request at his fourth request for, to proceed pro se, that is the basis in retrospect why he should never have been allowed to proceed pro se in the first place. He's talking about misconduct. Alleged misconduct. Alleged misconduct, yes. So what do you say about the alleged misconduct? I don't believe it was misconduct. I mean, it's clear that Mr. Bonds engaged in something he should have been doing. He was on the phone. He was referencing, trying to influence witnesses. In 2010, he did that, too. And it's important to note that the judge didn't deny him his right to go pro se on the first, the second, or the third request based on his conversations with witnesses from the 2010 conversations. It was only after the 2012 conversations came to her attention with defense witness Smith, who ended up being a state witness, by the way, that she said, OK, I'm going to shut down your phone contact. And when he requested to go pro se, her statements were more of I would have to vacate my order of you using the phone and give you access, which I don't want to give you to witnesses, if I allowed you to go pro se, which is actually not correct. She could have simply said, Mr. Bonds, that's fine. You can hang yourself, but you don't get a phone contact. You don't get library privileges. She was fully entitled to do that. And she could have done that, but no. She said, I would have to vacate my order. The argument would have been different up here if she had done that, saying you can represent yourself, but you can't use the phone, you can't use the library, you can't prepare for the trial. What would the argument be then? That would have been within her range. Maybe I would have come back and said that wasn't fair, but you know what? Mr. Bonds knew that. Mr. Bonds answered ready for trial at his last request. He said, you know what? I'm not going to have an extension of time. I'm going to let it go today. And he didn't ever request to just phone me. Basically, we turned on so we could contact witnesses. And the judge had no reason to be afraid that he was going to have any witnesses come in that he could have coerced, because the state had, because of his conduct in 2010 and 2012, transcripts of every single person he had ever talked to. They knew every witness, every person he was on the phone with. He hadn't spoken on the phone since April. So there was no danger that anybody knew coming in that Mr. Bonds could have influenced. We don't even know who he would have called. He might have called witnesses. Do you think this is close to the California case that the other side cites? I don't think this is close to the California. What's interesting to note about the California case is two things. This was about cutting off the defendant's right to self-representation. Once the right to self-representation was granted, the court found that this kind of egregious misconduct, getting the murder book and possible influence of witnesses, was a reason to remand it to a hearing and not a reason to actually say, yes, it was proper for you to deny this defendant the right to not represent himself. And it's interesting to note in the California case, that defendant actually got a new trial. They actually found that the judge's pure speculation about what this defendant may or may not do or did or did not do was simply not enough. And again, the state's asking this court to make brand new law, not just about how out-of-court misconduct. It has nothing to do with the daily function of what's happening in the trial, as well as can that conduct be used to just cut off somebody, just to say, you know what, you're not allowed to represent yourself, ever. And I don't think there's any support for that in Illinois. And they have nothing here. And again, I don't believe that this is actually gross misconduct. Mr. Bonds made several mistakes, which were introduced against him at trial. He knew that they were going to be introduced against him at trial. The witnesses that he was charged with trying to influence were state's witnesses. And they would have been testifying anyway. And what the judge did here is basically say, I'm not going to let you go pro se, because any evidence that you offer in your defense is probably going to be a lie. And it's going to be perjury, which is also improper. He had a right to present a defense. And the judge could have admonished the witnesses when they got on the stand about perjury and about telling the truth. There's lots that she could have done here. But again, I don't necessarily think that that was just part of her ruling. Because he was engaging in this conduct in 2010. And she didn't deny him his right to go pro se in the first, the second, or the third instance, even though she knew that he had engaged in this conduct before. It was only after maybe it was incurred increasing frustration with him, or maybe it was because she wanted to protect him. Because she actually said, the defendant is in his detriment of representing himself, I'm allowed to say, you cannot go pro se. Which we know is untrue. Feretta says, if a defendant is going to be in his detriment of representing himself, so be it. So it's possible that she was actually maybe trying to look out for him. But again, that's not a proper reason for her to deny him his right to go pro se. But once again also, I hate to be repeating myself, but we don't even need to get to the fourth. Because the first, the second, and the third are structural errors. And there's no basis for the state to say that we can go forward in time, engage in a harmless error analysis, and kind of smack it on to the first, the second, or the third. And I think my opponent will probably argue that when he gets up here. So if there's no Other questions? Mr. Arado. Good morning. May it please the court. Good morning, your honors, counsel. Most of the time we stand up here and we have to defend the actions of the judges in many instances. Obviously, the trial judge made several errors in denying defendants Feretta rights initially. I think the problem with defendants' argument as far as, oh, well, the very first time she did it, now it's structural error and everything else goes away, is that if you have, at some point, a correct ruling that he cannot represent himself, then the defendants' argument that, oh, well, the very first time he had improper denial, it's structural error and he gets a new trial. I don't think that should be When we get to a point, and I certainly understand the position that we're in, when we get to the point that in our argument that she made a proper decision to deny him his right to represent himself, that was factual. It cured. It was a save. It was a save. Because of his self-representation at that point, and still clearly before trial. Was it clear that that would deprive him of the right to self-representation? And that's the issue that we have. Is that a real question? That whether or not his conduct would have deprived him of the right to self-representation? Well, the court in Florida, and the California court, says that any conduct even outside the presence of the courtroom can be the basis for granting denial of his right to self-representation. So, it would, I think that yes, he should have been denied his right to self-representation because of his gross misconduct. So state would you think are the egregious factors of the conduct? Attempting to pay witnesses to change their testimony. I mean, now he's going to be presenting as his own counsel, perjury. Or potential perjury. Of course, the state has transcripts of all this. Sure, absolutely. And they can present that to the jury, and they can impeach the witnesses and say, hey, look what the defendant is going to do. But also reflects negatively as a system, a judicial system that we have. That we're allowing somebody who gathered perjured testimony to then be the one to present it to the jury. I think that is a detriment to the judicial system. It wasn't going to effectively present it. I mean, there was going to be impeachment all over the place. Oh, absolutely. There's no question that the... And the evidence was even presented at his trials. These two trials of his attempts. You know, the reason I'm asking these questions is it appears that the United States Supreme Court and the Illinois Supreme Court really have focused on... the absolute constitutional right for you to hang yourself and represent yourself. That is true. And Justice Miller even had a case where dealing with hybrid representation that there's some cases where you're required to do hybrid, you know, to get a standby counsel to help you out. So this is a fundamental constitutional right of a person to destroy themselves in the trial, right? Absolutely. And we understand that to be absolute. Yes, and... And the kind of problems, the few times that courts have held that you can't do that or you don't have a right to do that, is typically a person who cannot control themselves in the courtroom or they're not able to represent themselves. You're not alleging here that there was an inability to speak for himself or anything like that. So we've got none of that in this case. What we've got is someone talking the pretrial investigation work and trying to encourage people to testify in certain ways. Correct. Right? Correct. And I guess that's the point of the California case and that's why we've cited it. It was conduct, potential intimidation. Because in that case it was a remand for further information. True. And it didn't go anywhere. That's absolutely true. But I believe that we've also alternately have asked for a remand to determine if the judge was proper with it. Further information if the evidence here isn't exactly clear enough. So your theory basically, and I'm not using your words, is the trial judge erred, erred, erred, and then fell into a lucky save? If you... Well... She cured the error, early error. He cured it. He cured it for her, right? Well, no, the state presented it to the trial judge and said... Based on the defendant's own content. Right, correct. Correct. Mr. Urbano, isn't that all speculation? You know what the defendant said on the tapes. You don't know what he would have done at trial. The trial court didn't know what he would have done at trial. The trial court had options for correcting anything that she thought he might have done improperly. And basically you're asking us to say that this is curable as it can be viewed as harmless error based purely on speculation? Well, as far as the speculation aspect, the California Supreme Court said it's likely not the actual effect of misconduct that should be the primary consideration. That's Carson at 842. We're assuming that what he was trying to get was actually perjury, number one. I mean, he's offering a witness some money to tell something that he asserted on the tape was the truth. We're speculating. And the trial court denied him his constitutional right based on something that she thought might happen rather than anything that she had a basis for knowing. Well, influencing witnesses is, of course, a criminal offense. Is it a criminal offense for the police? For the police? To influence witnesses? Well, to get their statements. I'm sorry. And I'll just withdraw that question. I recognize the problems in this case and the fact that the constitutional footing that we have is really based upon whether or not misconduct outside the courtroom, misconduct that potentially can influence or have a negative impact on the judicial process is warranting of a defendant's denial of his constitutional right to represent himself. There is no question about that. What we're asking is that this court, and I'm not even sure this court is in a position to make that change, but to find that outside conduct that is not directly disruptive to the court but is disruptive to the system is warranting of the denial of this right. Was there a crime committed based on the defendant's conduct? No, he wasn't charged with that offense, but I think arguably... No, he wasn't charged with it. Arguably... Arguably, was that a crime committed? Yeah, witness tampering, yes. And arguably, that could have been charged. Yes, it could have been. Whether or not he's representing himself, right? True. But does that change the fact that the jury is going to be potentially presented with... When the defendant gets up there and starts questioning the witness, and then the state comes back on cross-examination and says, hey, didn't you talk to the defendant and didn't the defendant say this to you and wasn't he offering money to you to present your testimony? I mean, now the jury's really going to go out of their way to hate the defendant. So whether... Now if he's represented by counsel, maybe counsel can blunt that a little bit. So you're making this argument to save the defendant from himself? Well, not so much save him from himself because clearly, by all means, if you want to hang yourself, be my guest. But it's the damage the potential damage to the judicial process that we're really saying is a... Is it to the judicial process or to the defendant's case? Well, I think both. I think both because we have a defendant's case where he is caught clearly attempting tampering with witnesses and the judicial process, we don't generally like that. It's bad for the system. So... Anyway, there's... Mr. Morano, I'm sorry, we have testimony in the case where the witnesses are saying that they were told by the police that they were going to be prosecuted for something if they didn't give certain testimony. Are you concerned about that? That is something. Am I concerned about it? I mean, does it go to this particular case? I don't think it affects the outcome of this case because if the police are saying, hey, you know, we've got you. If you want to flip on the defendant as opposed to a defendant saying, hey, first he's trying to get some other witnesses to change their testimony, change their statements, please. And yet, later instance, he's trying to pay witnesses to... So, this is focusing on the defendant. What the police do, I mean, I have no influence over that, obviously. And the... But the... Does that happen all the time in cases? Sure. Does it come out to the jury? Sure, it does. But it's not the police officers who are representing the state. It's the state's attorneys representing the state. So, there is a real distinction between these two scenarios. You're talking about witness testimony on both sides. But one is where a defendant is actually the one who's representing himself and influencing the system. And here, and in the other one, the state's attorney has to decide, okay, can I use this testimony? And then, do I have to give those facts to the defendant in order for the defendant to use those in his trial? So, am I concerned about it? Well, it depends upon what level of influence it is. And is it physical abuse? Or is it simply saying, hey, you can be charged and if you, plus, police officers are denying, to a certain extent, those statements. So, again, it's a credibility issue. Here, we actually have the witnesses or the defendant on tape making those statements. But tampering with a witness, you can have people talking to witnesses that try to subtly or not so subtly encourage them to testify a certain way, which would not be tampering with a witness. Sure, absolutely. Based on factual background versus forthrightly trying to get them to lie about something. So, I mean, police officers, defendants, state's attorneys talk to witnesses all the time. Whether or not that's a crime depends on the circumstances. Correct. Obviously, the issues have been presented in a brief as best we can, and we would ask that this court affirm or alternatively remand for that hearing on the denial of this right. So the closest case you could ever find to what you're proposing is that one California case? Correct. And we recognize that that was after he had been granted his threat of rights, and that's why we rely on Rolfes, which says that you can deny in  trial defendants' rights. So we kind of have to dovetail those two. But Rolfes is a conduct case in the courtroom? Can you delay up the trial? There's no question that the factual scenarios are different, but I guess what we're pointing out is that it is possible to deny a defendant before trial his threat of rights, whereas, so that's why you have to then say, well, if it's possible in that case, if a defendant has severe misconduct outside the courtroom, can you deny him before trial? And we believe that that should be dovetailed together. Thank you, Your Honor. Any questions? Thank you, Mr. Arano. Ms. Lemus? Just very briefly, the judicial process was already protected. The evidence of the tampering was already admitted against him at trial, and it was going to be admitted regardless of who the attorney was. And the state has the ability to cross examine. So the state's already protected. And again, as he noted, they should have just let him do it because it would have even been worse for him had he done it. The right is the defendant's, and the defendant is the one who's doing 83 years in prison, and it's the defendant's conviction. Although we may know that it's a terrible idea for a defendant to go pro se, and they should never act as their own lawyer, our jurisprudence tells us we have to allow them to do that. And if it makes it worse for them, then they do. And... Let me ask you on remand, if we reverse remand for a trial based on this, and then there's a request to go pro se again, can the trial judge consider the witness tampering in making the decision whether or not to allow it? I don't think so. I think the witness tampering issue is... I don't think it was enough for... I don't think it was gross misconduct. And it was already used against him. He didn't commit a crime. The state didn't charge him with a crime. The state didn't charge the witnesses... The state didn't commit a crime. And the witnesses who were participating in the tampering, they weren't charged with any crime. They weren't charged with perjuring themselves. All three ended up becoming the state's witnesses. And that was it. There was no one else, as Justice McDade said, we don't know who she was talking about when she said potential perjury. The defense counsel was the one who listed Mr. Smith. So he would have  regardless  or not the counsel would have been Mr. Bonds or not Mr. Bonds. We don't even know who she's speaking of. The defendant was going to have no time to prepare a new case.          no time to prepare a new case. He had no time to prepare a new case. He had no time to prepare a new case. So there wasn't much  to prepare a new case. There were motions that were looked again into his mind but no time to prepare a new case. Short of going to law school there was no  school  was  time     Long of going to law school there was no time to prepare a new case. Long of going to law           of going to law school there was no time to prepare a new case. Long of going to law school there was